Christian *v.* Clark.

T. N. CHRISTIAN *et al. v.* JOHN E. CLARK *et al.*

1. HOMESTEAD. *Sureties on guardian bond* The sureties of a guardian upon a renewed bond executed after the passage of the homestead law cannot reach the homestead for their indemnity without showing that the default for which they are liable antedated the right.

2. SAME. *Conveyance.* Husband and wife joined in signing a deed conveying the homestead to a third person but without the privy examination of the wife; afterwards another deed was drawn up to be executed by the husband, wife and such third person to a vendee of the latter, but was only signed by the wife with privy examination. *Held,* that the homestead was not lost.

3. SALE OF LAND. *Title bond. Specific performance of contract.* A purchaser of land cannot be compelled to execute the contract where the vendor has only a bond for title to the land with a vendor's lien for unpaid purchase money outstanding.

4. VENDOR'S LIEN. *Preference to holder of one note over another for purchase money.* Notes for the purchase money of land secured by a lien thereon usually stand upon an equality, but the parties may by contract give a preference to the holder of one note, or create an equity by conduct which will equally give a preference.

5. ADMINISTRATOR. *Title to personal property. Creditors.* The reason of the rule requiring an administration to give title to the personalty of a decedent is the protection of creditors, and the objection of the want of such administration becomes merely technical when it is clear there are no creditors.

---

FROM DEKALB.

---

Appeal from the Chancery Court at Smithville. D. L. SNODGRASS, Special Chancellor.

CANTRELL & FORD and HOLLIS & SMITH for complainants.

R. C. NESMITH, W. D. GOLD and T. J. FISHER for defendant.

COOPER, J., delivered the opinion of the court.

About the first of the year 1860, Charlotte Clemens sold to her grandson, John E. Clark, a tract of land of fifty acres in Smith county, giving him a title bond, and taking his four notes for the purchase money, one of them at one day for $100, and the other three for $200 each, payable on the first of January, 1861, 1862 and 1863 respectively. Charlotte Clemens died in 1863, leaving as her only heirs and distributees a son G. J. Clemens and a daughter Louisa Clark, the mother of John E. Clark. No administration was taken out on her estate, the two children making an amicable division between them of her effects. In this division, Louisa Clark received two of the notes of John E. Clark for $200 each, and Clemens the other two notes. But, it seems, the note for $200 which fell to Clemens, had been received by him from his mother in her lifetime. This note he assigned to P. Gold, who recovered judgment upon it against John E. Clark before a justice of the peace in August, 1873, for $194.68, the unpaid residue. Gold caused an execution on this judgment to be levied on the tract of land of fifty acres, and when the same was sold by virtue of the levy became the purchaser, and advanced on the land the whole of the judgment, and the amount of another judgment he held on Clark. Afterwards he made a contract with Clark and wife

for the purchase of the land, the wife, Tabitha Jane Clark, having set up a claim to homestead. By this contract, Gold was to pay $950 for the land, about $300 of the amount in the judgments mentioned and other claims, and the residue in money. He did pay $100 to Mrs. Clark in the presence of her husband. On the 3d of September, 1875, in pursuance of this contract, Clark and wife signed a deed of conveyance of the land to Gold, but no probate of the execution of the instrument and no privy examination of the wife were ever taken. The reason was, that shortly after his purchase Gold agreed to sell the land to Monroe Preston for $1,000, and undertook to execute a deed to him jointly with his own vendors. Accordingly, on September 21, 1875, a deed of conveyance of the land was prepared in the names of Clark and wife and Gold as bargainors and Monroe Preston as bargainee. This instrument was signed by Tabitha Jane Clark alone, her privy examination being taken to its execution. On October 15, 1875, the original bill in this case was filed in DeKalb county by T. N. Christian and others, as the sureties of John E. Clark on a bond given by him as guardian of a minor ward, to reach the land or the proceeds of its sale to Gold for their indemnity. The bill made John E. Clark, Pleasant Gold, Monroe Preston and Geo. J. Clemens defendants, and alleged that John E. Clark was behind in his accounts as guardian by several hundred dollars, for which a suit had been instituted against him and them on the bond on behalf of the ward. The bill further alleged that Clark had left

the State, and then resided in Illinois. The complainants were proceeding on the assumption that Clark had title to the land, and had made some kind of fraudulent conveyance of it to Pleasant Gold or Monroe Preston, and they asked, if the sale was valid, that the purchase money be impounded and applied to their indemnity.

. John E. Clark answered the bill, denying that he had left the State, and claiming to be a resident citizen of this State. He admitted that he was chargeable as guardian with $800, which he insisted would be reduced by credits to about half the amount. In his answer, he set out the facts in relation to the purchase of the land from his grandmother, and the execution of his notes for the price, which were a lien and outstanding except a payment of $75 to his mother on the two notes held by her, and the payments made to Gold on the note upon which he had recovered judgment. He further stated that the land had been sold to Gold for $950, in satisfaction *pro tanto* of his debt which was a lien upon the land, and the residue of the purchase money, he said, was to be invested in lands in the State of Illinois for the benefit of his mother in consideration of the notes held by her which were a lien on the land.

Gold in his answer claimed that he had bought the land from Clark and wife for $950, all of which had been paid except $509 due Mrs. Clark. The payments were in judgments on John E. Clark as above specified, and in $100 paid the wife. He admitted that Clark and wife had a homestead right in

the land, and he had made the trade with them for that reason, although he thought he had acquired a good title at the sheriff's sale. This defendant seems not to have been then aware that Clark had no title to the land.

Pending the litigation Gold died, and his heirs and personal representatives filed an answer and cross-bill to bring before the court the facts in relation to the title of Clark. Upon these facts, they asked for a rescission of the contract of sale between Clark and wife and P. Gold, and that the money paid by the latter should be declared a lien on the land, and the land subjected to the satisfaction thereof. They sought this relief especially as to the amount of the judgment recovered on the note which was a lien on the land. They made Clark's wife and mother parties defendant to the bill, and insisted that the mother was cognizant of the trade with Clark and wife, was living with them on the land, and knew that Gold was paying money, and extinguishing judgments secured by solvent stayors on the faith of acquiring a good title to the land, without setting up her claim. They insist that the mother was estopped to deny their right to relief.

The cross-bill of the Golds was answered by Clark, his wife and mother. In this answer, Clark repeats that the contract between him and Gold was that the judgment which Gold had recovered on the note for the purchase money of the land was to be satisfied as part consideration of the sale, and the balance of the price was to be paid to him Clark, to be invested in land in the State of Illinois as a home for his mother-

during her life, and then to be a homestead for himself and wife. His mother denies that she was present at the time Gold made his payment on the land, and insists that the legal title is in her and that she is entitled to a lien for the purchase notes due her. The wife claims that she has never parted with her homestead right, and that it should be allowed her.

Louisa Clark, the mother, filed a bill in the nature of a cross-bill to enforce her lien for unpaid purchase money, and this bill was answered by the Golds. The wife was, upon her application, made a defendant to the original bill and filed an answer thereto.

Two witnesses prove the payment by Gold of $100 on the land to Clark's wife in his presence, and one of these witnesses further testifies that Gold said as he delivered the money: "This makes $400 I have paid you." Another witness, Geo. J. Clemens, proves the terms of the sale of the land by Charlotte Clemens to John E. Clark, the division of the purchase notes, after her death, between him and Clark's mother, and that he had assigned one of his notes to P. Gold, and the other to another Gold. He proves the residence of Clark and wife on the land.

The guardian bond, on which the complainants became bound as sureties for John E. Clark, is averred in the bill to have been executed on March 3, 1873. There is neither averment, nor proof to show a liability on the bond prior to its date. As against these complainants, John E. Clark was entitled to a homestead right in the land as the head of a family. This right could only be alienated by the joint consent of

husband and wife evidenced by conveyance duly executed as required by law for married women. The husband and wife did join in the deed to P. Gold, but this instrument was not duly executed as required by law for married women, for her privy examination was never taken. The conveyance itself seems to have been abandoned by the parties, with the intention of joining in another deed as grantors to Monroe Preston. But the latter deed was only signed by the wife without the husband, and is therefore fatally defective. Moreover, the husband and wife had no such title to the land as the purchaser could be required to accept. The husband had only a bond for title subject to a lien for unpaid purchase money. The Golds were clearly entitled to a rescission of the contract of sale, even if the husband and wife had joined in such a conveyance as would have carried the homestead right. But no such conveyance having been made, the contract was void as to that right.

In this view, all that the Golds can enforce against the land is the amount due upon the judgment recovered on one of the purchase notes. The lien of that note is superior to the homestead right, and the satisfaction of the judgment must be vacated, and the land subjected to the payment of that debt: *Shannon* v. *Erwin*, 11 Heis., 338. The other payments claimed by the Golds are denied by the answers and not proved except as to the $100 paid to the wife in the presence of the husband. But this payment, as well as the other payments claimed if proved, would be of no avail against the homestead right. The exemption of

the statute would fully protect that right against them. All that the Golds can legally obtain is a judgment against the husband for the money shown to have been paid, and a vacation of the satisfaction of the other judgments extinguished in the transaction.

But Louisa Clark joins her son John E. Clark in the answer filed to the cross-bill of the Golds. In that answer, John E. Clark repeats in substance what he had said in his answer to the original bill in regard to the contract of sale between him and P. Gold. He says he sold the land to Gold for $950, to be paid partly in the judgment on the lien note, and the residue in money to be in satisfaction of the lien notes held by his mother, and to be invested in lands in Illinois for her benefit. The mother must be held bound by these statements of the joint answer of herself and her son and his wife. The payment of $100 being in accordance with the contract would be binding on her. The Golds have the right, therefore, to enforce the vendor's lien of the mother, which is admitted by the son, to the extent of this payment with interest, in addition to the lien for the amount of the judgment on the lien note of P. Gold. And under the circumstances they are entitled to priority of satisfaction over the mother out of the proceeds of sale to the extent of their recovery, although ordinarily all notes given for the purchase money of land stand upon an equality. The parties may, by contract, give a preference to the holder of one of the notes: *Menken* v. *Taylor*, 4 Lea, 445; *Hicks* v. *Smith*, 4 Lea, 459. And they may also by their conduct create an equity

which will equally give such preference. The contract between John E. Clark and Gold having been made for the benefit of the mother, and, as her answer fairly implies, with her knowledge and consent, and having failed because of the inability of Clark to make a good title, Gold is equitably entitled to be reimbursed out of her interest in the land any money actually paid by him in accordance with the contract.

The Golds further claim that they should have a lien on the land for the amount of other judgments and debts of Clark which P. Gold in his answer says were included in the trade. But the allegations of the cross-bill in this regard were denied in the answer of the Clarks, and not sustained by the proof. The mother, moreover, is not shown to have been present when the $100 were paid by Gold to the wife, and is therefore not bound by the statement of Gold then made as deposed to by one of the witnesses. Any satisfaction of such claims may be set aside as to John E. Clark.

Louisa Clark, the mother, is entitled, as between her and her son, who admits her claim, to have the land sold for the satisfaction of the residue of the purchase notes held by her. The son has not objected to her claim that the notes were received without having had administration on the estate of Charlotte Clemens. The principal reason of the rule for requiring the assent of a personal representative is the protection of creditors, and the objection of the want of such a representative becomes merely technical where it is obvious that there are no creditors: *Brandon* v. *Mason,*

1 Lea, 616. Mere lapse of time is no protection against an admitted vendor's lien: *White* v. *Blakemore,* 8 Lea, 49.

The Golds are, of course, liable to Monroe Preston for the consideration paid by him to P. Gold, with interest, the title to the land having failed.

The chancellor's decree must be reversed, the original bill dismissed, and the rights of the parties settled by decree in accordance with this opinion. The cause may be remanded for the execution of the decree. The costs of the cause will be paid in the first instance by the Golds, but they will be entitled to be re-imbursed these costs out of the proceeds of the sale of the land.